FILED: January 31, 2017

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 17-4004
(2:16-cr-00036-RGD-DEM-1)
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERALD ANDREW DARBY,

    Defendant - Appellant.

_____

O R D E R
_____

Upon consideration of the government's unopposed motion to vacate the defendant's guilty plea and the resulting judgment and to remand the case to the district court for further proceedings, the court grants the motion. The court vacates the guilty plea, vacates the judgment, and remands the case to the district court for further proceedings.

The clerk is directed to attach the government's unopposed motion to this

order and to transmit both to the district court.

 Entered at the direction of the panel: Judge King, Judge Agee, and Judge Diaz.

        For the Court

        <u>/s/ Patricia S. Connor, Clerk</u>

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Appellee, | ) |
| | ) |
| v. | )  No. 17-4004 |
| | ) |
| GERALD ANDREW DARBY, | ) |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

**United States' Unopposed Motion to Vacate and Remand**

The United States respectfully requests that this Court vacate defendant's guilty plea and the resulting judgment and remand for further proceedings. Defendant entered into a conditional guilty plea that reserved his right to appeal a discovery issue, as well as claims under the Fourth Amendment and Fed. R. Crim. P. 41. Because the discovery issue is not case dispositive as required for a valid conditional plea, and because a conditional plea that preserves even a single non-case-dispositive issue is invalid, defendant's conditional guilty plea should be vacated. *See, e.g., United States v. Bundy*, 392 F.3d 641 (4th Cir. 2004); *United States v. Sherif*, 382 F. App'x 272 (4th Cir. 2010). Defendant does not oppose this request.

## I. Background

Defendant pleaded guilty to one count of receiving images of minors engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). His written plea agreement provided that he waived his right to appeal his conviction and sentence "except for the right to have an appellate court review the adverse determination of defendant's Motions, in exchange for the concessions made by the United States in this plea agreement." *United States v. Darby*, No. 2:16-cr-36-RGD-DEM, Dkt. No. 54 at 4.

Defendant's motions in the district court included two motions that sought to suppress all of the evidence of child pornography in defendant's case under the Fourth Amendment and Fed. R. Crim. P. 41. The district court rejected those motions to suppress in an opinion and order filed on June 3, 2016. *See* Dkt. No. 31. The rulings on these motions are case dispositive, as briefly described below, and may be preserved for an appeal through a conditional plea.

After defendant filed his motions to suppress, defendant also filed a motion to compel discovery. As explained below, that motion, which the district court denied on August 12, 2016, in Dkt. No. 49, is not case dispositive under this Court's opinions in *Bundy* and *Sherif*.

2

Defendant was prosecuted following an FBI investigation of a website, Playpen, that was used to distribute child pornography. Both defendant's suppression motions and his discovery motion addressed aspects of the FBI's investigation of the Playpen website. The Playpen website was unusual because it was hosted on the Tor network, and as the district court explained, the Tor network, originally developed by the U.S. Naval Research Laboratory, conceals the identities of its users. The Tor network can be accessed only using special software that masks the Internet Protocol (IP) address of both those who access and those who host websites on the Tor network. Dkt. Nos. 31, 49 at 1. The background information that follows about the FBI's investigation and the Tor network summarize factual findings that the district court made in its opinions and orders in Dkt. Nos. 31 and 49.

Ordinarily, on the internet, a website is able to identify a user's IP address, and a particular IP address can then be traced back to a particular Internet Service Provider (ISP) and a particular ISP customer, allowing that customer to be identified. But when a user accesses the Tor network, communications from the user are routed through a network of computers around the world, and only the IP address of the last computer is identified—not the IP address of the user seeking to visit a website—when a user connects with a website on the Tor network. Because

3

of the difficulty of identifying users on the Tor network, such users can effectively remain anonymous in visiting websites on the network.

Users of the Tor network must have very specific information to find websites on the network. A user of the Tor network cannot simply perform a search to find a hidden website; rather, the user must know the Tor-based address of the website. Moreover, users of the Playpen website had to register on the website to get access to it, using a code name.

After the FBI was able to identify the people who were operating Playpen, the FBI arrested those individuals and obtained a search warrant to identify users who were visiting the website and obtaining child pornography. As the FBI's warrant application explained, when an individual visits a website, they request content from that site and that content is downloaded on the individual's computer. Through the warrant, the FBI was able to include a Network Investigative Technique (NIT) in content downloaded from Playpen, which then sent information about Playpen users' computers to the government. The NIT authorized by the warrant identified (1) the IP address of the computer and the date and time this information was determined; (2) a unique identifier that distinguished the data from the activating computer from other computers; (3) the type of operating system used by the computer; (4) information about whether the NIT had already been sent to the computer; (5) the computer's host name; (6) the

4

computer's operating system user name; and (7) the computer's media access control address.

Defendant was identified using this warrant. Once defendant was identified, the FBI obtained a second warrant to search his home and computer, a search that yielded the child pornography that resulted in his guilty plea.

Defendant's first motion to suppress raised three arguments: First, he contended that the NIT warrant was not supported by probable cause. Second, he argued that the FBI either intentionally or recklessly misled the court that issued the NIT warrant. Third, he argued that the NIT warrant was an anticipatory warrant and that the triggering event establishing probable cause did not occur. Defendant's second motion to suppress argued that the magistrate judge who issued the NIT warrant lacked jurisdiction to issue the warrant under the Federal Magistrates Act and Fed. R. Crim. P. 41. The district court rejected all four of defendant's arguments in his two motions.

In defendant's separate motion for discovery, filed after his suppression motions, he asked the district court to order "the government to provide the source code or programming code for the NIT it used to search [defendant's] computer." Dkt. No. 49 at 4 (quoting Def. Mot. to Compel Disc. at 1). Defendant wanted the court to compel the government to provide "what he refers to as 'the payload,

5

exploit, payload generator, and server component,' which, collectively, he claims constitute the 'full source code' of the NIT." *Id*.

As the district court found, the United States had already provided significant discovery addressing a number of defendant's requests:

> The government has already turned over some of what Defendant requests. Additionally, it has provided material—or offered the opportunity to Defendant to inspect certain evidence—that it believes would allay Defendant's concerns about the operation of the NIT. The government has provided Defendant with the computer instructions it placed on his computer, which Defendant refers to as the payload. The government has also provided the data that were sent from Defendant's computer to the government server. These data are stored in a PCAP file, which has been docketed in readable form. Decl. of Special Agent Daniel Alfin ("Second Alfin Decl."), ECF No. 45, Ex. 1A. The government has offered Defendant the opportunity to otherwise inspect his computer. It has offered to provide a copy of the Playpen website as it existed when the government administered it. While administering Playpen, the government recorded the activity of each visitor to the site. The government has offered Defendant those records that track the username that the government alleges was Defendant's.
>
> The government will not turn over the exploit or the code that generated the unique identification codes for each visitor to Playpen. The government will not allow Defendant access to its servers.

Dkt. No. 49 at 5-6.

The district court denied defendant's motion to compel discovery beyond what the government had already been provided. In rejecting defendant's discovery request, the district court found, "Defendant invents a variety of scenarios whereby the information he seeks about the operation of the NIT might aid him in developing a defense. Defendant has not used any of the information

6

that the government has provided to him or offered to provide him in order to establish a factual basis for these scenarios. As a result, the Court does not have before it any evidence that the information sought would aid *this* Defendant." *Id*. at 8.

Defendant's conditional plea agreement has sought to preserve a challenge to that ruling on appeal. But under this Court's precedent in *Bundy* and *Sherif*, the district court's discovery ruling is not case dispositive and cannot validly be preserved by a conditional guilty plea.

**II.    Analysis**

This Court has repeatedly rejected that the denial of a discovery motion could properly be preserved in a conditional guilty plea. This Court comprehensively described the requirements of a conditional guilty plea in *United States v. Bundy*, 392 F.3d 641 (4th Cir. 2004). As *Bundy* explained, conditional guilty pleas must satisfy four requirements: The conditional plea agreement must be (1) "in writing and must specify the adverse pretrial rulings that the defendant seeks to appeal"; (2) the government must consent to the conditional plea; (3) the district court must approve the conditional plea; and (4) the conditional plea must preserve only case-dispositive issues. *Id*. at 645.

In applying the last requirement, this Court has defined when an issue is case dispositive by explaining that resolution of the case-dispositive issue must legally

7

dictate that there will be no further litigation in the case after the appeal is decided, regardless of whether the defendant wins or the government wins the appeal:

> The disposition of a pretrial issue is case-dispositive if (1) a ruling in the defendant's favor would require dismissal of the charges or suppression of essential evidence, or (2) a ruling the in the Government's favor would require affirming the conviction. *See* Fed. R. Crim. P. 11 advisory committee note. In short, there should be no trial after the specified issues are resolved by the court of appeals. Neither the defendant nor the Government should be able to prolong proceedings in the district court after obtaining a favorable outcome on appeal.

*Id*. at 648.

Summing up, this Court explained that "[l]imiting the kinds of issues that can be preserved by a conditional plea ensures that the criminal case will be disposed of promptly, either by dismissal of the charges or affirmance of the conviction and sentence." *Id*. at 647.

Suppression issues can satisfy this standard when the exclusion of evidence will require dismissal of the charges for lack of evidence. In evaluating whether a suppression issue satisfies the case-dispositive requirement, the "question for the district court is whether the court of appeals' resolution of the issue specified in the plea would end the case one way or the other." *Id*. at 648.

To determine whether resolution of an issue would require that the case end with dismissal or affirmance, "the district court should give considerable weight to the Government's assessment of the case." *Id.* at 648 (citing *United States v. Burns*, 684 F.2d 1066, 1073 (2d Cir. 1982); Fed. R. Crim. P. 11 advisory

8

committee note). For suppression motions, for example, "the Government is best positioned to know what effect suppression would have on the case." *Id*.

Applying these standards, this Court concluded in *Bundy* that some pretrial suppression motions were case dispositive but that a discovery issue raised in that case was not case dispositive. The defendant in *Bundy* had pleaded guilty with a conditional plea to one count of possession of an unregistered firearm. He raised two suppression issues that this Court agreed were case dispositive. In one suppression argument, Bundy argued that "the firearms registration scheme violates his Fifth Amendment privilege against self-incrimination." *Id*. In a second suppression argument, Bundy sought "blanket suppression of evidence seized from his house on the ground that law enforcement officers exceeded the scope of the warrant and conducted an unconstitutional general search." *Id.* But Bundy also sought to preserve a discovery issue that was not case dispositive.

The discovery issue that Bundy sought to preserve dealt with an "order denying a motion for production of certain documents." *Id*. This Court rejected that "this order is *per se* case-dispositive because the parties made it the subject of a conditional plea." *Id*. As this Court explained, for the discovery issue, "If Bundy prevails on this issue, then he will be permitted to see certain documents and decide whether they help his defense. A favorable ruling on this issue will not

9

guarantee dismissal of Count two, the only charge of which Bundy was convicted." *Id*.

Similarly, in defendant's case, his discovery motion sought the production of certain information, and if he obtained the information, he could then further evaluate "whether they help his defense." But as the district court found, defendant could only speculate about how the discovery might aid his defense, and discovery itself hardly requires dismissal. Moreover, even when a court orders discovery, the court has a broad range of options for relief that distinguish discovery motions from successful suppression motions.

For example, at least some of the information sought by defendant is presently classified and hence would be subject to procedures in the Classified Information Procedures Act (CIPA), 18 U.S.C. App. 3. In certain circumstances, under CIPA, courts have refused to order that classified information be produced to a defendant personally, have limited discovery to defense counsel who have security clearances, and have allowed the government to produce classified summaries of highly classified reports. *See, e.g., United States v. Moussaoui*, 591 F.3d 363, 280 n. 13 (4th Cir. 2010). Sections 4, 5, and 6 of CIPA can permit the government to use substitutes for classified information and establish procedures for that. *Id*. at 281. The adequacy of those substitutions can themselves be a subject of further litigation. *Id*. at 284-85. And this Court reviews a district

10

court's rulings on classified discovery under CIPA for abuse of discretion, *see, e.g., United States v. Passaro*, 577 F.3d 207, 220-21 (4th Cir. 2009), a standard of review that underscores the breadth of possible outcomes when dealing with classified discovery. To take one illustration, in cases where a defendant's attorney is unable to acquire a security clearance or refuses to participate in the clearance process, the court can preclude the attorney from obtaining access to the classified information. *See, e.g., United States v. Abu Ali*, 528 F.3d 210, 253-54 (4th Cir. 2008).

By the same token, regardless of the standards in CIPA, even if the government refused to produce discovery that the district court ordered, sanctions for refusals to produce discovery vary widely, including granting continuances, prohibiting the introduction of certain evidence, or entering any other order that is just under the circumstances. *See, e.g., United States v. Sterling*, 724 F.3d 482, 512 (4th Cir. 2013) (citing Fed. R. Crim. P. 16(d)(2)). Under some circumstances, no remedy is ordered at all. *See, e.g., United States v. Hammoud*, 381 F.3d 316, 336 (4th Cir. 2004) (en banc), *vacated on other grounds*, 543 U.S. 1097 (2005), *reinstating opinion addressing challenges to conviction*, 405 F.3d 1034 (4th Cir. 2005).

Successful suppression challenges, in contrast, lead to exclusion of evidence. Although nonconstitutional violations of Rule 41 do not lead to suppression unless

11

the defendant was prejudiced by the putative violation or the officers intentionally and deliberately violated Rule 41, *see, e.g., United States v. Claridy*, 601 F.3d 276, 283-84 (4th Cir. 2010) (citing *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000)), exclusion is required once the standard for a prejudicial, intentional violation is met.

In *Bundy*, this Court "conclude[d] that the presence of one non-case-dispositive issue in this conditional plea renders the entire plea invalid." 392 F.3d at 649. That one non-case-dispositive issue was a discovery request that was denied. The same circumstance applies here, and thus, this Court should vacate defendant's plea and the resulting judgment and remand for further proceedings where the parties can enter into a new plea or proceed to trial.

        Respectfully submitted,

        Dana J. Boente
        United States Attorney

By: _____/s/_____
        Elizabeth M. Yusi
        Assistant United States Attorney
        Attorney for the United States
        United States Attorney's Office
        101 West Main Street, Suite 8000
        Norfolk, Virginia 23510
        Phone: (757) 441-6331
        Fax: (757) 441-6678
        Email: elizabeth.yusi@usdoj.gov

**Certificate of Compliance**

I certify that this motion does not exceed 5,200 words and is written in 14-point Times New Roman font, satisfying Fed. R. App. P. 27(d), 32(a)(5) and (a)(6).

**Certificate of Service**

I certify that on January 25, 2017, I filed electronically the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

\_\_\_/s/_____
Elizabeth M. Yusi
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Phone: (757) 441-6331
Fax: (757) 441-6678
Email: elizabeth.yusi@usdoj.gov