```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
        UNITED STATES OF AMERICA,        )
 5                                       )
               Plaintiff,                )
 6                                       )        CRIMINAL CASE NO.
        v.                               )           2:16cr00036
 7                                       )
        GERALD ANDREW DARBY,             )
 8                                       )
               Defendant.                )
 9   - - - - - - - - - - - - - - - - - -

10

11                       TRANSCRIPT OF PROCEEDINGS
                           (Motion to Suppress)
12
                            Norfolk, Virginia
13
                             May 10, 2016
14

15

     BEFORE:   THE HONORABLE ROBERT G. DOUMAR,
16             United States District Judge

17

18   APPEARANCES:

19             UNITED STATES ATTORNEY'S OFFICE
               By:  Elizabeth M. Yusi
20                  Leslie Fisher
                    Assistant United States Attorneys
21                  Counsel for the United States

22             FEDERAL PUBLIC DEFENDER'S OFFICE
               By:  Rodolfo Cejas, II
23                  Assistant Federal Public Defender
                    Counsel for the Defendant
24

25
```

Heidi L. Jeffreys, Official Court Reporter

```
 1              (The hearing commenced at 10:59 a.m.)
 2              THE CLERK:  United States of America v. Gerald
 3    Andrew Darby, Case 2:16cr36.
 4              Are the parties ready to proceed?
 5              MS. YUSI:  Good morning, Your Honor.  Beth Yusi, and
 6    with me I have Leslie Fisher, from the Department of Justice.
 7              THE COURT:  Who is going to argue the case,
 8    Ms. Yusi?
 9              MS. YUSI:  I will be dealing with the first motion
10    to suppress, and Leslie Fisher will be dealing with the
11    second motion to suppress.
12              THE COURT:  Okay.  All right.
13              Mr. Cejas, where is all your help?  Well, I see
14    you've got some help back there in the back of the courtroom.
15    I think they came here to observe.  They're not going to help
16    you?
17              MR. CEJAS:  I reserve the right to call Mr. Colgan.
18              THE COURT:  This is on your motion, Mr. Cejas.
19    Let's get started.  Go ahead.
20              MR. CEJAS:  Thank you, Your Honor.
21              Your Honor, just as an introductory matter, we don't
22    have any witnesses, but I believe the United States may have
23    at least one.
24              We filed the first motion to suppress raising
25    essentially three issues; one, that the NIT warrant here that
```

1    was issued by the Judge in the -- the Magistrate Judge in the

2    Eastern District of Virginia out of Alexandria, that, one, it

3    lacked probable cause; two, that the FBI intentionally misled

4    the issuing court; and that, three --

5              THE COURT:  Stop.  Was what?

6              MR. CEJAS:  I'm sorry, Your Honor?

7              THE COURT:  One is you were talking about probable

8    cause.

9              MR. CEJAS:  Yes, sir.

10             THE COURT:  Two?

11             MR. CEJAS:  Two is -- and I just -- and, of course,

12   I'll refer to the brief that we submitted, but, in any event,

13   that the FBI intentionally or recklessly misled the issuing

14   court in how the cite appeared at the time the warrant was

15   issued.  Of course, the information, which I believe is

16   uncontested, is that the FBI had seized control of the site

17   prior to --

18             THE COURT:  You're talking about the changes.

19             MR. CEJAS:  Yes, sir -- well, I'm talking about the

20   site was seized, I believe, on February 19th, 2015.  It had

21   an appearance at that particular time, which was not

22   indicated in the government's request for the NIT warrant,

23   and we believe that that, of course, is inappropriate.

24             The third issue, of course, is that it was an

25   anticipatory warrant and that there was no triggering event

1   at the time that the warrant was issued; therefore, there was

2   no probable cause at the time the warrant was issued.

3           Of course, I think --

4           THE COURT:  Well, let's deal with just this issue

5   now, and we'll deal with the second -- we'll deal with these

6   three points at this time --

7           MR. CEJAS:  Yes, sir.

8           THE COURT:  -- and then we'll argue the other

9   question about whether the warrant itself is void -- how is

10  that, okay? -- later.

11          MR. CEJAS:  That's fine, Judge.

12          THE COURT:  Okay.  Go ahead.  I'll be glad to hear

13  from you.

14          MR. CEJAS:  All right.  Your Honor, obviously, we

15  wrote a detailed position in our brief that I submitted to

16  the Court addressing each of these issues in detail.  We

17  believe that, first, it was not supported by probable cause.

18  I believe the government does have some exhibits in reference

19  to the Playpen Web site, but the Playpen Web site had both

20  questionably -- had a mix of legal and illegal content,

21  arguably; chat rooms, message forums, and so forth.  That, in

22  and of itself, did not provide sufficient probable cause for

23  the issuance of the warrant.  There was not enough

24  information with that alone to suggest that there was some

25  illegal activity involved.

Heidi L. Jeffreys, Official Court Reporter

1          And I think it's important, even as a background

2     to -- and I know, again, we both addressed it in our

3     briefs -- how this NIT warrant -- how it operated.  The TOR

4     network was designed to provide -- yes, sir.

5          THE COURT:  Yes, but the question that we're dealing

6     with now is probable cause for how the Internet operates, so

7     we'll deal with that.  And I will deal with it, Mr. Cejas,

8     just strictly -- that's the main issue that you're making in

9     this particular portion of the motion to suppress.

10          MR. CEJAS:  Well, again, Your Honor, we believe it

11     wasn't supported by probable cause.  It wasn't any

12     particularized information about the site, about the site

13     visitors.  It didn't include an expert collective profile.

14     The information was simply lacking in the application itself.

15     The pictures at the time that the -- the pictures posted on

16     the Playpen site at the time the warrant was issued, there's

17     no suggestion that they contained -- that they were not

18     lascivious images.  I would note, as we cited in our brief,

19     the fact that there was nudity in and of itself does not

20     indicate that there was child pornography or anything that

21     this warrant sought to authorize.

22          So we believe that under those circumstances --

23     again, I don't want to reiterate everything that we

24     submitted -- the probable cause was lacking.  It was simply

25     not sufficient information to authorize the issuance of that

```
 1   warrant.
 2         THE COURT:  So you contend that the affidavit
 3   submitted was not sufficient.  Isn't that correct?
 4         MR. CEJAS:  Yes, sir.
 5         THE COURT:  All right.  Is there anything in
 6   particular in this affidavit that you think is lacking?
 7         MR. CEJAS:  Well, yes, sir, Your Honor.  I believe
 8   there are a variety of things in the -- let me just go -- I'm
 9   just going through my submission.  There's no particularized
10   information about the site visitors.  There wasn't any
11   particular -- it didn't contain an expert --
12         THE COURT:  What do you think jail bait is?  You
13   don't like jail bait?  Jail bait?  You know, what is jail
14   bait?  Tell me just what you think jail bait is.  Do you
15   think there's an understanding of what jail bait is?  Boy, or
16   jail bait girl?
17         MR. CEJAS:  I don't have any particular
18   understanding one way or the other, Your Honor, not since
19   high school, anyway.
20         THE COURT:  You think boys are jail bait and --
21         MR. CEJAS:  I'm sorry, Your Honor, I missed the
22   Court's question.
23         THE COURT:  You know, jail bait videos, girls,
24   boys -- you know, Mr. Cejas, what is your position on that?
25   How about preteen videos or preteen photos or -- you know,
```

```
1    how about all of that?  Would you say that's not probable
2    cause?
3            MR. CEJAS:  Well, Your Honor, what I suggest is that
4    at the --
5            THE COURT:  How about fetish, you know, bondage,
6    chubby, feet, panties, nylon, spandex, pee, scat, spanking,
7    vintage, voyeur, zoo -- what do you think that's all about?
8            MR. CEJAS:  Well --
9            THE COURT:  That's just good, honest conduct of any
10   good child porn place, right?
11           MR. CEJAS:  No, not necessarily, Your Honor.  I
12   think fetish is not necessarily limited to child pornography.
13   Some of the other things that the Court cited are not
14   necessarily limited to child pornography.  There are
15   suggestions in reference to --
16           THE COURT:  What do you think preteen photos are?
17   Do you think that this guy is advertising that he's a
18   portrait photographer?  Is that what he's doing?  And if you
19   do, Mr. Cejas -- it's possible.  It could be.  He could be a
20   portrait photographer.  You know, he just wanted to show how
21   preteen -- and how about "preteen videos with girls"?
22           MR. CEJAS:  Well, Your Honor, I think if we look to
23   the name of the Web site itself, there's nothing in there
24   that's necessarily associated --
25           THE COURT:  How about "preteen videos girls HC"?
```

1    Does it mean hard core?  That's what it says here.

2          "Based on my training and experience, I know that

3    the following abbreviations respectively mean:  HC, hard

4    core."  What do you think is -- you know, Mr. Cejas, without

5    stopping Ms. Yusi, I don't have much problem with probable

6    cause, very frankly.  I don't want to cause anybody not to

7    have an opportunity to speak and call forth, you know, but

8    I'm just looking at the application.  That's all.

9          MR. CEJAS:  I understand, Your Honor.

10          THE COURT:  I don't have any problem with that.

11          But I'll hear from Ms. Yusi, in case she wants to

12    say something.  She better, because you never know.  The

13    Court of Appeals might say I didn't give you enough time.

14          MS. YUSI:  Thank you, Your Honor.

15          I mean, we do -- as we attached the affidavit, I

16    don't think we need to put it as an exhibit; it's the purpose

17    of the motion to suppress.  But if the Court would like, we

18    do have Special Agent Alfin, who was involved with the case,

19    who can reiterate everything he said in the affidavit.

20          THE COURT:  Well, you don't have to.  You really

21    don't, Ms. Yusi.

22          MS. YUSI:  Okay.

23          THE COURT:  You know, I don't waste time, and all of

24    this has been very well briefed by both sides, so there's no

25    question that I understand it.  And one can pick out any part

1    or portion of things, but there's no question that there's

2    probable cause here, there just isn't, unless somebody says,

3    I don't know anything about or never heard of child

4    pornography.  Maybe if I never heard of it and came from Mars

5    and landed on the earth I might have a different view.  But,

6    unfortunately, I think this is, without question, a child

7    pornography production place.  I don't think there's any

8    question about it.

9            MS. YUSI:  Your Honor, I really have nothing to add,

10   then.

11           THE COURT:  So I'm not trying to stop you, Ms. Yusi,

12   I'm just saying it's fully briefed.  There's no question

13   about that.

14           So let's get to the meat in the coconut in this

15   case.  And it's a really important part, and I'll get to that

16   with Mr. Cejas.

17           MS. YUSI:  Thank you.

18           THE COURT:  And that is the question of the Federal

19   Rules of Criminal Procedure, okay?

20           Let's go, Mr. Cejas.

21           MR. CEJAS:  Well, Your Honor, let me just say in

22   reference to the previous point that the things that the

23   Court cited, of course, are accessed after you actually get

24   into the site, not on the home page itself.  All of those

25   things that Your Honor cited were not on the home page

```
1    itself, and so I think that is of some importance.

2              Again, the --

3              THE COURT:  I don't doubt, Mr. Cejas, that it's of

4    some importance, the fact it's there.  It's there.  And, you

5    know, I'm going to assume that a person doesn't know anything

6    about the computer?  I'm not going to do that.  The question

7    is that in today's world the computer has become second

8    nature.  Imagine.  The computer is so strong as a subject of

9    children's education that they don't teach handwriting

10   anymore.  Imagine.  So if the computer is that important,

11   that a person doesn't have to handwrite anymore -- they use

12   the computer.  You know, I'm just not going to get into it.

13             Mr. Cejas, I appreciate the fact that you wrote an

14   excellent memorandum, and I read it, and I've read the

15   material, and I just -- there's no question in my mind about

16   probable cause.

17             MR. CEJAS:  All right.

18             THE COURT:  So once we get over that, let's get to

19   the real meat in the coconut in this case, and that is, I

20   think, a very important question --

21             MR. CEJAS:  Well, Your Honor --

22             THE COURT:  -- did the Magistrate Judge have the

23   authority to issue this warrant.  And that's what is really

24   the question.

25             MR. CEJAS:  Well, Your Honor, of course, our
```

1  position is that the Magistrate did not have the authority to
2  issue the warrant, and the warrant was, in fact, void when it
3  was issued.  It cannot be supported by the Magistrates Act,
4  nor can it be supported by Rule 41(b).
5      This warrant had no geographical limitation.  It's,
6  in essence, a warrant to search and seize anything or any
7  particular computer anywhere.  There are no jurisdictional
8  limits, and I believe that the Magistrate Act limits the
9  jurisdiction of the Magistrate to issue a warrant.  It has to
10  be limited to the district where the Magistrate is sitting.
11  There's certainly no authority whatsoever to issue, in this
12  case, a nationwide search.
13      In its response the government makes much of the
14  fact that the computer in this case, Mr. Darby's computer,
15  was actually located within the Eastern District of Virginia.
16  I would suggest that that's not relevant -- I'm sorry?
17      THE COURT:  Don't you think that's important?  It's
18  no prejudice to Darby, is it?
19      MR. CEJAS:  Well, of course it is, Your Honor.  If
20  the warrant had been issued for the Eastern District of
21  Virginia, then I wouldn't have, necessarily, an argument to
22  suggest that a Magistrate would not have that authority.
23      But it wasn't issued for the Eastern District of
24  Virginia, it was issued for essentially anywhere.  And this
25  warrant has been used in at least, that we know of, maybe 18

1    jurisdictions.

2          THE COURT:  Why does Darby have the authority or the

3    standing, in essence, to complain about that which did not

4    prejudice him?

5          MR. CEJAS:  Well, Your Honor, it certainly did

6    prejudice him.  The warrant that was issued again in this

7    Court in January of this year was based, in large measure,

8    upon this warrant that was issued on February 20th of last

9    year.  Obviously, but for that warrant, Mr. Darby wouldn't be

10   sitting here.

11         So I think there's no question he was prejudiced.

12   There's no question, for that matter, that he has standing.

13   Because it was that warrant that they used to identify his

14   address, his IP address, and the other information that the

15   Malware, that the NIT, the technique, depending on which word

16   the Court wants to use -- but for that warrant, they would

17   not have been able to identify Mr. Darby's computer to get

18   the IP address or any other information, the subscriber

19   information, anything else.  So certainly he has standing to

20   raise this issue.

21         THE COURT:  Well, obviously, you say that 41(b) does

22   not mean what it says.  Why did they change it?  Why did they

23   change Rule 41?  What were the changes?

24         MR. CEJAS:  Your Honor, I don't believe Rule 41 has

25   been changed as of this particular time.  This -- I know that

```
1    there is an amendment pending, but it has not been changed.
2         THE COURT:  That's what I'm talking about.  There's
3    an amendment now to Rule 41(b) -- 41.  The new proposed
4    rule -- I don't know if it's in effect or not -- is enough to
5    recognize that it needed to be changed.  Why did it need to
6    be changed?
7         MR. CEJAS:  I don't think I'm following you, Your
8    Honor.
9         THE COURT:  Well, now they plan on doing this:
10        "Venue for warrant application at the request of a
11   federal law enforcement officer or an attorney for the
12   government, a Magistrate Judge with authority in any district
13   where activities related to a crime may have occurred has
14   authority to issue a warrant to use remote access to search
15   electronic storage media and to seize or copy electronically
16   stored information located within or outside the district if
17   the district where the media or information is located has
18   been concealed through technological means..."
19        No need to go on, but what do you say about that?
20        MR. CEJAS:  Well, I believe the amendment is based
21   on the fact that as it existed when this warrant was issued
22   demonstrates that the Magistrate simply did not have the
23   authority, or that this warrant was not sufficient, or that
24   Rule 41 did not permit --
25        THE COURT:  I made a mistake.  April 28, 2016.  So
```

```
1    is this -- it says...

2              (There was a pause in the proceedings.)

3              THE COURT:  "The amendment shall take effect on

4    December 1st, 2016."  You're quite correct.

5              But it is a proposed amendment -- it's not proposed,

6    it is an amendment that will take effect in December of 2016,

7    correct?

8              MR. CEJAS:  I assume, without any additional act

9    from Congress, yes.  But it's much like the amendments that

10   are proposed in the sentencing guidelines, and it is my

11   experience that this Court does not necessarily abide by

12   amendments -- proposed amendments in the guidelines.  There

13   are a variety of amendments that are proposed by the

14   Sentencing Commission that have been passed, I believe, in

15   April of this year.  They will not become law or become in

16   effect until November 1st, so I don't believe that the Court

17   is obligated to --

18             THE COURT:  Well, do you think it was necessary to

19   change Rule 41?

20             MR. CEJAS:  Well, I believe so, because it

21   recognized that the Magistrate did not have the authority

22   under the current version of Rule 41.

23             THE COURT:  Okay.

24             MR. CEJAS:  Which I think is consistent with our

25   argument.
```

```
 1           THE COURT:  Absolutely.
 2           MR. CEJAS:  And, so, because the Magistrate doesn't
 3  have the authority at this time, this amendment has not
 4  been -- is not law, and so the Court -- I think the amendment
 5  shows that the Magistrate did not have the authority to issue
 6  it, and, therefore, it is, in fact, void as of now, as of the
 7  point -- more importantly, when it was issued in February,
 8  2015.
 9           THE COURT:  Whether the rule actually voids a
10  warrant where it does not give the authority to the
11  Magistrate Judge to issue the warrant.  Isn't that your
12  position?
13           MR. CEJAS:  Yes, sir.
14           THE COURT:  And that, succinctly stated, is that
15  since the Magistrate Judge does not have the authority to
16  issue the warrant -- the wording is "to search for and seize
17  a person or property located within the district."
18           This warrant authorizes the search of anyone
19  anywhere, correct?
20           MR. CEJAS:  That is -- yes, Your Honor, "wherever
21  located."
22           THE COURT:  And, therefore, since that's the case,
23  it violates the terminology utilized in Rule 41.  But your
24  client is in the State of Virginia, right?
25           MR. CEJAS:  Yes, Your Honor.
```

1           THE COURT:  And the only search conducted was within
2      the state, correct?
3           MR. CEJAS:  (Shrugs.)
4           THE COURT:  So you're saying maybe the warrant is
5      void, but the guy is guilty.  Isn't that about what they say?
6      He's guilty, so why not figure out a way to send him to jail?
7           MR. CEJAS:  Well, I think it would be, perhaps,
8      issuing a warrant to stop every car that comes down Route 13,
9      because we know historically on Route 13 drugs are
10     transported either from New York or Philadelphia to Virginia.
11     We pretty much know that.
12          THE COURT:  That's a pretty good idea, I think.  It
13     would certainly slow down the drug trade.
14          MR. CEJAS:  Perhaps, but it would certainly be
15     unconstitutional.
16          THE COURT:  If they closed the bridge-tunnel every
17     once in a while it slows down the drugs.  And, you know, the
18     local people can raise the prices then, you know?
19          MR. CEJAS:  Well, maybe so, Judge.  But, again, the
20     point is that it would be unconstitutional, and the fact that
21     they get lucky every once in a while --
22          THE COURT:  Let me ask you this:
23          Does the Magistrate Judge have the authority to
24     issue the warrant?  If the Magistrate Judge does not have the
25     authority to issue the warrant, is the warrant valid because

Heidi L. Jeffreys, Official Court Reporter

1    the Magistrate Judge could have issued a warrant against this

2    particular person?  Isn't that where we really are?

3              MR. CEJAS:  Sort of, Judge.  I don't believe the

4    fact that the Magistrate could have is relevant, because

5    we're not talking about what they could have done, we're

6    talking about what they did.  They issued a warrant for any

7    computer, wherever located.  And so when the government --

8              THE COURT:  They certainly did that, and there's no

9    question about that.  The question then comes down to is

10   there -- should the warrant be void ab initio; that is, if

11   it's void ab initio then the defendant could have the search

12   annulled --

13             MR. CEJAS:  Yes, sir.

14             THE COURT:  -- and the evidence flowing from that

15   search.  I think it's a really important question.

16             Let me hear from the Department of Justice, who is

17   going to argue this point.  I think this is really important.

18             We have a case in Massachusetts, and we have a case

19   in Washington.

20             MS. FISHER:  Good morning, Your Honor.

21             THE COURT:  Were you involved in either of those

22   cases?

23             MS. FISHER:  In the Massachusetts case?  No, Your

24   Honor.

25             THE COURT:  Huh?

1          MS. FISHER:  In the Massachusetts case?  No, Your

2     Honor, I wasn't.

3          THE COURT:  In the Washington case you were?

4          MS. FISHER:  I'm not sure if our office was involved

5     in the briefing for that case, Your Honor.

6          THE COURT:  Oh, okay.

7          MS. FISHER:  Your Honor, in this scenario that we

8     have here, which is a Magistrate Judge in the Eastern

9     District of Virginia who issued a warrant for a NIT to be

10    deployed in the Eastern District of Virginia, on a server

11    located in the Eastern District of Virginia, which led law

12    enforcement to find a defendant located in the Eastern

13    District of Virginia, the government's position is there's no

14    need to even go beyond that analysis.

15         There's no doubt that a Magistrate in the Eastern

16    District of Virginia has authority as to this defendant, as

17    applies to Mr. Darby, and if we're talking about --

18         THE COURT:  Was any warrant issued against

19    Mr. Darby?

20         MS. FISHER:  Would have authority to issue a warrant

21    against Mr. Darby.

22         THE COURT:  Was there a warrant issued against

23    Mr. Darby?

24         MS. FISHER:  No, Your Honor, but as is applied here

25    in this case we're talking about Mr. Darby, and if we looked

1   at it the way the defense seems to want it to be, which is

2   that this Magistrate could only issue any warrant that would

3   only have effect within the Eastern District of Virginia --

4   which the government does not concede that that's the case,

5   but even if we looked at it that narrowly, the way the

6   defense is stating it should be read, this warrant would

7   still apply to Mr. Darby, even if it was limited to the way

8   the defendant suggests, within the Eastern District of

9   Virginia.  To only have effect within the Eastern District of

10  Virginia, it still would have found Mr. Darby, and it still

11  would apply to Mr. Darby.

12          THE COURT:  Is there anything in the warrant that

13  says it only had effect in the Eastern District of Virginia?

14          MS. FISHER:  No, Your Honor, but it does thoroughly

15  explain that the NIT and the server are located within the

16  Eastern District of Virginia, and so the Magistrate with the

17  closest ties to the NIT and to the server is the one who

18  issued the warrant.

19          THE COURT:  Suppose the person was using an Internet

20  on the Key Bridge.  Could they have taken that?

21          MS. FISHER:  Was using the Internet where, Your

22  Honor?

23          THE COURT:  On the Key Bridge.

24          MS. FISHER:  On the Key Bridge between D.C. and

25  Virginia?

```
1              THE COURT:  Yes.
2              MS. FISHER:  Yes, I think it would still apply to
3     them, Your Honor.  In this case, as we laid out in the
4     response to defendant's second motion to suppress, even
5     if --
6              THE COURT:  It always interests me.  The Key Bridge
7     interests me because, you know, I've said you could smoke
8     marijuana on the Key Bridge, but if you come back to Virginia
9     you can't.  According to the Justice Department, that is.
10             MS. FISHER:  I didn't know that, Your Honor.
11             THE COURT:  You didn't?
12             MS. FISHER:  I didn't know that you could smoke
13    marijuana on part of the Key Bridge and not on another part.
14             THE COURT:  Well...
15             MS. FISHER:  But, Your Honor, I think, as we've laid
16    out in our brief, this warrant, as it was issued and as it
17    was applied, doesn't violate either Rule 41, as it is
18    currently written -- we don't even -- the defense makes a big
19    point in their motion to talk about this proposed amendment.
20             THE COURT:  It's not proposed.
21             MS. FISHER:  It's more than proposed, Your Honor.
22    It has been approved by the Supreme Court.
23             THE COURT:  Let's don't play games.  It's
24    interesting to note the amendment tells me that they felt it
25    was necessary to change the rule.
```

1            MS. FISHER:  They felt it -- I'm sorry, Your Honor.

2            THE COURT:  And if they changed the rule to make

3    it -- there's no question that a Magistrate Judge in December

4    of 2016 can issue such a warrant.  The question is today can

5    a Magistrate Judge issue such a warrant.  If the Magistrate

6    Judge issues the warrant, then you're saying even though the

7    Magistrate Judge does not have authority to issue the

8    warrant, it doesn't make any difference.  Isn't that where we

9    really are?

10           MS. FISHER:  No, Your Honor.  Our argument is that

11   this Magistrate did have authority to issue the warrant, not

12   that it doesn't matter whether she had it or not, but that

13   she did have it.

14           THE COURT:  Oh, she did?

15           MS. FISHER:  Yes, Your Honor, that's the argument as

16   laid out in the --

17           THE COURT:  Read me 41(b) that says that.

18           MS. FISHER:  Your Honor, talking about this

19   amendment that's going to go into effect in December, if you

20   look at what actually the defense attached to their motion,

21   the proposed amendment and then the memorandum sort of

22   addressing --

23           THE COURT:  Did the warrant allow to search and

24   seize a person or property other than within the District of

25   Virginia?

Heidi L. Jeffreys, Official Court Reporter

1          MS. FISHER:  Your Honor, the way that it works with

2    the Internet is that any defendant that was found through

3    this warrant reached into the Eastern District of Virginia

4    electronically to get what they wanted off of the server,

5    which was child pornography in this case.  And, so, if you --

6    as laid out in the brief, I think sort of the more analogous

7    parts of Rule 41(b) to this particular issue are, I would

8    say, Rule 41(b)(2) and Rule 41(b)(4).

9          Rule 41(b)(2) allows a Magistrate to issue a warrant

10   for property outside the district if it's located in the

11   district at the time the warrant is issued but may be moved

12   outside.  And that's what happened here.  The child

13   pornography was located on the server located in the Eastern

14   District of Virginia.  The defendants who were found through

15   this warrant reached into the District of Virginia to get the

16   child porn and electronically took it back to their district.

17   So that's an analogous part of 41(b), as is Rule 41(b)(4),

18   which allows for a tracking device.

19          This is, in essence, an electronic tracing device,

20   and Rule 41(b), as it's written right now, allows for that.

21   And that's why in the briefing that the Department of Justice

22   provided with regard to this amendment it was made clear that

23   this does not expand Rule 41(b), it merely clarifies Rule

24   41(b) for this brave new world we're in with technology.

25          THE COURT:  I always like clarifications, especially

1    when they spell it out.  They're just clarifying.  I wish the

2    advisory committee to the rules, the civil rules, would say

3    that.  That would be interesting.  They're always clarifying

4    rules, aren't they?

5              So you don't really have to change the rules.

6              MS. FISHER:  Your Honor, I don't know that the

7    change is necessary, and I think that's laid out in the

8    Department of Justice's briefing.  It's just to make it

9    abundantly clear that Rule 41(b) allows for this type of

10   search and to avoid situations like this in the future, where

11   we're arguing about whether it does or doesn't.  It will be

12   very clear.

13             But the government's position is that Rule 41(b), as

14   it is written right now, allows for this search warrant.

15             THE COURT:  So the government's position or the

16   Department of Justice's position is that Rule 41 allows a

17   District Judge to conduct such a warrant or to provide such a

18   warrant as long as the locale to which things are being

19   generated comes into Virginia at some time or other.  Isn't

20   that correct?  Isn't that your position?

21             MS. FISHER:  Well, I am saying that that's what

22   happened in this case.  In this case the NIT, the server,

23   were located in the Eastern District of Virginia.  Even

24   ignoring the fact that Mr. Darby himself was located in the

25   Eastern District of Virginia, even if he was located across

1    the country, he had to reach into the Eastern District of

2    Virginia electronically to get that data.

3              THE COURT:  So once the person sends in the

4    request -- okay? -- then you're saying they can't go out and

5    search his computer in Ohio, correct?

6              MS. FISHER:  No, that's not what I'm saying.  I

7    think this warrant is valid --

8              THE COURT:  Under what authority can they search his

9    computer in Ohio?

10             MS. FISHER:  Well, they would have to get a second

11   search warrant, as was done here, for the particular

12   residence, which was done here, which has been done in all

13   the cases that have generated from this NIT.  A local

14   Magistrate Judge was then gone to with probable cause to get

15   a search warrant for that home.  In this case it just so

16   happens that Mr. Darby's home was also in the Eastern

17   District of Virginia.

18             And, so, in all of these cases there have been two

19   warrants.  There's the NIT warrant, and then for the home

20   there's been a second warrant gotten from the district in

21   which the person's computer is.  And that's what happened

22   here; a second search warrant was gotten for his home.  So --

23             THE COURT:  So the obtaining of the information for

24   which the second warrant is based was not illegal, correct?

25             MS. FISHER:  No, Your Honor.  I believe the Eastern

District of Virginia Magistrate who issued the warrant for
the NIT had the authority to do so, as applied to Mr. Darby,
and as applied to anyone that accessed that Web site, and
then, therefore, the information that was gotten was taken to
a Magistrate here, and we got a search warrant for
Mr. Darby's home.

So I don't think it's illegal at any stage or
outside of the bounds of Rule 41 at any stage in this case.

THE COURT:  There really isn't any necessity to
amend 41, then.

MS. FISHER:  Your Honor, I'm not -- I think that's
above my pay grade whether we should amend Rule 41.

THE COURT:  I should clarify all the rules?  I'd
like to clarify a bunch of rules, if I could.  I think it's a
great idea.  I don't want to change them, just clarify them.
Isn't that what we do?  So we'll see.

MS. FISHER:  Yes, Your Honor.

THE COURT:  But your position is there's no question
that as long as the warrant is issued, no matter how broad it
is, it's permissible under Rule 41.

MS. FISHER:  I wouldn't say no matter how broad a
warrant is, but the warrant in this case -- we've already
discussed there was probable cause for the NIT warrant.  Your
Honor has already addressed that.

THE COURT:  I'm not worried about the probable case.

         1          MS. FISHER:  The judge --

         2          THE COURT:  There's no question that this particular

         3     place was designed to provide child pornography.  There isn't

         4     any question in my mind about that, and I don't like to argue

         5     about useless things.  And I hate to put Ms. Yusi off,

         6     because she's pretty good, but that's neither here nor there.

         7     The question really is there was probable cause to issue a

         8     warrant.  The question wholly is did the Magistrate Judge

         9     have the right to issue the particular warrant it issued.

        10          MS. FISHER:  Yes, Your Honor.

        11          THE COURT:  And you're saying if the warrant, as

        12     served, could have been and would have been in this

        13     case limited to Virginia -- but it wasn't so limited in

        14     words, but it was in use limited to Virginia, because it

        15     wasn't applied outside of the state, correct?

        16          MS. FISHER:  Your Honor, that argument that I

        17     started with was just to say that this could be a very simple

        18     issue for this Court to decide in this particular situation,

        19     because Mr. Darby is in the Eastern District of Virginia, and

        20     so we don't really need to look beyond that in this argument.

        21     But if we do, the government's position is --

        22          THE COURT:  Now that I'm not worried about that

        23     right off the bat, let's go to the other part.

        24          MS. FISHER:  Right, Your Honor.  And the

        25     government's position then is that this warrant, as it's

1   applied, as it's written, even as applied to defendants

2   outside of the Eastern District of Virginia, is still within

3   the bounds of Rule 41 and still within the bounds of the

4   Fourth Amendment, and it is a legal warrant.

5           THE COURT:  So 41 as it presently exists allows a

6   Magistrate Judge to issue a warrant that would encompass

7   individuals residing in other states, as long as they are

8   sending material to this state, correct?

9           MS. FISHER:  Yes, Your Honor, that's how it happened

10  in this case; is that the judge with the closest ties to the

11  server and the deployment of the NIT was the Magistrate Judge

12  who approved this warrant.  So the server and the NIT were

13  located within the district, the geographic district, over

14  which she has authority.  It has effects outside of that

15  district, but Rule 41(b) anticipates that that's going to

16  happen with warrants issued by magistrates.  But even with

17  property that's located in the district at the time the

18  warrant is issued, as it was in this case, that after that it

19  might go outside of the district, like a tracking device, or

20  like property that someone physically moves from one place to

21  another.

22          THE COURT:  It's an interesting point.  Let me hear

23  what Mr. Cejas has to say about that.  I think it's very

24  interesting.

25          All right, Mr. Cejas.  The government contends that

Heidi L. Jeffreys, Official Court Reporter

1    the Magistrate Judge had the authority under 41 to issue the

2    warrant.

3            MR. CEJAS:  Well, Your Honor, our position is that

4    the Magistrate did not have the authority to issue the

5    warrant under Rule 41.

6            In the case that we cited, *United States v. Levin* --

7    and there was an amended memorandum and order issued last

8    week on May 5th -- the Court addressed that exact issue.

9    This warrant was issued not -- it wasn't limited to the

10   Eastern District of Virginia, nor was there any language in

11   the warrant limiting it to anywhere.  In fact, that was the

12   language, "anywhere" or "wherever found."

13           The Magistrate does not have the authority as Rule

14   41 existed at the time this warrant was issued, to issue that

15   sort of warrant.  It could not have been issued as Rule 41

16   exists at this particular time.  If anything, the amendment

17   shows that there was an issue.  I guess you could use the --

18   if you follow the government's argument, it would almost

19   be -- I guess, to use a phrase, if it's not broke, don't fix

20   it.  If it's not broke, there's no need to fix it.  Well,

21   obviously there's some problems.  That's why the basis for

22   the amendment, because the Magistrate could not do what it

23   did in this case.

24           And, to answer the Court's question, the government

25   has sought to use this warrant in searches in a variety of

 1    jurisdictions; in Massachusetts, which was the *Levin* case, in

 2    Washington State, in Wisconsin.  And in at least, I believe,

 3    18 different jurisdictions they've used this particular

 4    warrant to justify searches.

 5           And, as is cited in *Levin*, what is authorized by

 6    this warrant is not necessarily -- it's a search not for the

 7    server, obviously, but where the computer is.  And in this

 8    case it's wherever, "wherever found," and the Court simply

 9    did not have the authority to issue that sort of warrant.

10           Rule 41 does not give them --

11           THE COURT:  -- find out where the computer is, is it

12    local, correct?

13           MR. CEJAS:  I apologize.

14           THE COURT:  We're searching a local place to

15    determine where the computer is.

16           MR. CEJAS:  Well, the warrant authorizes the search

17    of the computer, wherever that computer is.  And that is the

18    problem; is that the Magistrate did not have the authority to

19    issue that warrant.

20           If Rule 41 had been followed, the warrant simply

21    could not have been issued as it was drafted.

22           THE COURT:  Anything else?

23           MR. CEJAS:  No, sir, Your Honor.  I would ask the

24    Court, as we cited in our brief, I think this is -- Judge

25    Young in *United States v. Levin*, particularly in the opinion

Case 2:16-cr-00036-RGD-DEM Document 79 Filed 02/21/17 Page 30 of 32 PageID# 1045

1  written on April 20th, and again in the amended order of
2  May 5th, addressed each of these issues and sided, I believe,
3  in our favor, so we would ask the Court -- no, I don't have
4  anything else to add, Judge.
5           THE COURT:  Thank you, Mr. Cejas.
6           Anything either of you desire to add?
7           MS. FISHER:  No, Your Honor.
8           THE COURT:  Anything else?
9           It's an interesting matter, and I find it very
10 difficult, and I'm going to look at it again in consideration
11 of the government's position that the warrant was issuable
12 under Rule 41.
13          Otherwise, I have some problem with it.  If the
14 warrant is void, then it's void.  But we'll see where we're
15 going.  It's whether the Magistrate Judge could or could not
16 have issued the warrant, and that's, to me, the real problem
17 in the case.
18          Some say, well, there's no prejudice that this
19 gentleman, Mr. Darby, would have in this case, because he's
20 from Virginia, in Virginia, no search was conducted outside
21 of Virginia, the material that came in to the server was from
22 Virginia.  So we'll see.  You'll hear from me probably
23 about -- I hope by the end of the week.
24          All right, unless you want to tell me anything else.
25 If not...

I'll finish.

Heidi L. Jeffreys, Official Court Reporter

1           I'm sorry I didn't have your FBI agent testify, but

2    I didn't see any reason for having the FBI agent testify.  I

3    just -- probable cause is in this case.  There's not any

4    question about that, in my mind.  So I don't go through

5    useless things unless I have to, okay?

6           (The hearing adjourned at 11:44 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6                                /s

7                       Heidi L. Jeffreys

8

9                       February 21, 2017

10                            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25