1

```
 1                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                        NORFOLK DIVISION


 3


 4   UNITED STATES OF AMERICA,      )
                                    )
 5             Plaintiff,           )
                                    )
 6   v.                             )    Criminal Action No.:
                                    )         2:16cr36
 7   GERALD DARBY,                  )
                                    )
 8             Defendant.           )


 9


10                      TRANSCRIPT OF PROCEEDINGS


11                          (Sentencing)


12

                            Norfolk, Virginia
13                          December 15, 2016


14


15   BEFORE:   THE HONORABLE ROBERT G. DOUMAR
               United States District Judge

16


17


18   Appearances:


19        OFFICE OF THE UNITED STATES ATTORNEY
                 By: LESLIE FISHER, ESQUIRE
20                   ELIZABETH YUSI, ESQUIRE
                     Counsel for the United States

21

          OFFICE OF THE FEDERAL PUBLIC DEFENDER
22               By: RODOLFO CEJAS, ESQUIRE
                     Counsel for Defendant

23

          The Defendant appearing in person.

24


25
```

```
1                        P R O C E E D I N G S

2

3           (Proceedings commenced at 10:07 a.m. as follows:)

4

5           COURTROOM DEPUTY CLERK:  Criminal Case No. 2:16cr16,

6   the United States of America v. Gerald Andrew Darby.

7           Ms. Fisher, Ms. Yusi, is the government ready to

8   proceed?

9           MS. FISHER:  Yes, we are.  I am.  Good morning, Your

10  Honor.

11          COURTROOM DEPUTY CLERK:  Mr. Cejas, is your client

12  ready to proceed?

13          MR. CEJAS:  Yes, we are.  Good morning, Your Honor.

14          THE COURT:  Good morning, Mr. Cejas.

15          Mr. Darby, if you will come forward to the podium with

16  your lawyer, Mr. Cejas?

17          Mr. Darby, first, it would be my -- it's indicated you

18  pled guilty previously, Mr. Darby, subject to the motion to

19  suppress, and it was a conditional plea, conditioned thereby.

20  It is the finding of this Court in the case of United States v.

21  Gerald Darby that the defendant is fully competent and capable

22  of entering an informed plea to Count 1 of this indictment, and

23  that his plea of guilty is a knowing and voluntary plea

24  supported by an independent basis in fact containing each of the

25  essential elements of the offense.  The Court therefore accepts
```

1  this conditional guilty plea, conditioned upon the question of

2  the motion to suppress.  Is that correct, Mr. Cejas?

3          MR. CEJAS:  Yes, sir, Your Honor.

4          THE COURT:  As to Count 1 of this criminal indictment.

5  And I do find him guilty.

6          Now, Mr. Darby, this is a sentencing hearing.  At this

7  hearing, you have the right to present a sworn or an unsworn

8  statement before sentence is imposed.  You have an opportunity

9  to have your lawyer speak for you or to present any letters,

10  writings, witnesses or documents or anything of any kind that

11  you think might be helpful to the Court in announcing the

12  sentence to be imposed upon you.  Do you understand your rights

13  before sentence is imposed?

14          THE DEFENDANT:  Yes, I do, Your Honor.

15          THE COURT:  Now, Mr. Darby, you can have a seat and

16  I'll hear from Mr. Cejas, then I'll hear from Ms. Fisher and

17  then I'll come back to Mr. Cejas.

18          MR. CEJAS:  Thank you, Your Honor.

19          THE COURT:  Mr. Cejas, you have objected to the

20  finding, inconclusive finding of whomever conducted the --

21          MR. CEJAS:  Your Honor, I don't really have any case

22  law to support that position, we just believe that it was not

23  appropriate, necessarily, to include that within the presentence

24  report.  And I think that we would simply ask the Court to, as

25  the Court looks at that, to look at that certainly in the

```
1    context of all the other facts that are listed in the

2    presentence report, particularly his mental health state prior

3    to that time, and even since that time.  So...

4             THE COURT:  Well, I understand, Mr. Cejas.  The

5    testing is absolutely essential.  I do, I believe that Mr. Darby

6    is not a pedophile.  I'm not concerned about that at all.

7             MR. CEJAS:  Yes, sir.

8             THE COURT:  And since I am the sentencing judge,

9    that's the important portion of what that report would be for.

10             MR. CEJAS:  Yes, sir.

11             THE COURT:  I don't think it matters that much later

12    on.  This case is interesting, very interesting, Mr. Cejas, in

13    that Mr. Darby is obviously an individual of high intelligence

14    who was placed in the Navy in an isolated situation dealing with

15    the nukes and the nuclear energy program.  And it's odd, because

16    that program evidently causes people to get involved in the

17    inner workings of the Internet.  And it's not the first case

18    we've had in this regard.

19             MR. CEJAS:  Yes, sir.

20             THE COURT:  So consequently I'm fully aware of it.

21    And I'm fully aware that Mr. Darby suffered as a child.  And the

22    question of the isolation situation, without being hard on Mr.

23    Darby, is the situation of the necessity of having a great deal

24    of psychological work that should be done.

25             But let me hear from Ms. Fisher, because --
```

5

```
1              MR. CEJAS:  Yes, sir.

2              THE COURT:  -- I'm inclined to take all of that into

3   consideration.  You know, when we look at Title 18, Section 3553

4   and we look at the various requirements, it's a serious offense

5   because it keeps these people in business who provide --

6              MR. CEJAS:  Yes, sir.

7              THE COURT:  -- this material.  As far as affording

8   adequate deterrence to criminal conduct, I don't think it deters

9   anybody, because nobody knows about it other than the fact --

10  they have no idea when they're dealing with this on the Internet

11  that it's even criminal.  That's what's so disturbing.  They

12  have an idea that it's secret, but they don't necessarily have

13  any idea that it's criminal.  And so when we get into Title 18

14  Section 3553, we get into this problem.  There is no question

15  that we've got to protect the public from further crimes of this

16  defendant, but the further crimes is looking at more of this

17  material, and therefore aiding in its publication --

18             MR. CEJAS:  Yes, sir.

19             THE COURT:  -- by virtue of the fact that he pays for

20  it.

21             What is needed is a lot of medical care.  Psychiatric

22  care.

23             MR. CEJAS:  Yes, sir.

24             THE COURT:  It worries me, because what is happening

25  throughout the country is becoming evident:  That we are filling
```

1  about somewhere close to 30 percent of the prisons of the United

2  States with people who, years ago, would have been placed in a

3  mental institution and tried to provide rehabilitation efforts

4  through the medical society.  And to me, that is not what a

5  prison is for.  In reading Mr. Darby's presentence report, you

6  cannot help but understand how he got into that position.

7          MR. CEJAS:  Yes, sir.

8          THE COURT:  He certainly was maligned as a child and

9  sort of rejected by society, or felt rejected by society.  And I

10  can understand that.  The problem is that he was a highly

11  intelligent individual, and that's why he got into the nuclear

12  program in the Navy.

13          MR. CEJAS:  Yes, sir.

14          THE COURT:  But let me hear from Ms. Fisher.  Because

15  the way that these cases work is they add everything, you know?

16  They just overemphasize the additions under the sentencing

17  guidelines.

18          But Ms. Fisher, what do you recommend in this case?

19          MS. FISHER:  Your Honor, the government recommends a

20  within-guidelines sentence for Mr. Darby.  The defendant has

21  requested a mandatory minimum sentence here, but this is not a

22  mandatory minimum case if you look at the underlying facts.

23          THE COURT:  Tell me why it isn't, Ms. Fisher.

24          MS. FISHER:  Your Honor, the defendant, if you look at

25  the nature of the images the defendant specifically was looking

1  at, he had a large number of images and videos, but what was

2  actually in those images and video is particularly disturbing.

3  He had images, a lot of images that involved bondage, children

4  whose wrists were bound, children who were tied to walls.

5  Images of prepubescent children being both vaginally and orally

6  penetrated by adult men.  And he was using sophisticated

7  software.  He was using Tor software to anonymize his identity

8  to avoid detection.

9        THE COURT:  Ms. Fisher, how much of that is due to the

10  Japanese theories that have been invoked in this case or that

11  begin to appear in these cases where that sort of bondage and

12  violence is so prevalent in that country, evidently?  What do

13  you feel is the advantage of a sentence within what you call the

14  guidelines, which are merely advisory -- or I think now because

15  of the reversal that there's no question that they're purely

16  advisory -- and so everybody treats them as if you've got to

17  follow them.  So you contend that they're mandatory?

18        MS. FISHER:  No, Your Honor, they are advisory.  But

19  they are a good place to start for an appropriate sentence.

20  And --

21        THE COURT:  So they're good place to start.  Okay.  So

22  let's start.  What else did you use in coming to the conclusion

23  which you came to, Ms. Fisher?

24        MS. FISHER:  Well, Your Honor, as I already spoke to,

25  the disturbing nature of what the defendant was looking at, the

8

1    particularly violent nature of the images --

2         THE COURT:  Well, that goes without saying.  I

3    understand that.

4         MS. FISHER:  And Your Honor, these --

5         THE COURT:  What else did you look at?

6         MS. FISHER:  These types of crimes, while they may

7    appear to take place merely on the Internet, they don't actually

8    occur in a vacuum.  These images and videos are real children,

9    and each image of video --

10        THE COURT:  There's no question that if they weren't

11   real children, Ms. Fisher, we wouldn't be here.  So let's forget

12   all of that.  Let's get on to what it is that differs this case

13   from just looking at pornography of children, which in and of

14   itself is horrible, no question about it, but what else have you

15   considered in making your recommendation?

16        MS. FISHER:  Well, just what I've already said, Your

17   Honor:  The disturbing, violent nature of images, the use of Tor

18   to hide his identity --

19        THE COURT:  You said that.

20        MS. FISHER:  Well, nothing --

21        THE COURT:  Ms. Fisher, understand me:  What else have

22   you, other than the violent nature of the pictures?

23        MS. FISHER:  That's, that concludes what I was going

24   to say, Your Honor, those three things.

25        THE COURT:  Well, what are the factors in Title 18

1  Section 3553; that is, that you have to look at the history and

2  characteristics of the defendant.  Did you do that?

3          MS. FISHER:  Yes, Your Honor.  And the defendant

4  admitted that he's been doing this for three or four years.  So

5  this is not an isolated incident, he's been doing this for a

6  number of years.

7          THE COURT:  So the fact that he's been doing it for a

8  number of years does not take into consideration any of the

9  characteristics:  What he is, who he is, his intelligence or

10 lack of intelligence, what he's done, what was he doing, what

11 has society done.  Is society partly to blame for all of this?

12 Where do we go and where do we end?

13         I'm very concerned, Ms. Fisher, concerning where we're

14 going with these cases.  Initially I followed the guidelines,

15 and then I began to realize that they don't take into

16 consideration the factors that are there.  How do we afford

17 adequate deterrence to criminal conduct?  Tell me about it.

18 What?

19         MS. FISHER:  An appropriately long sentence, Your

20 Honor.  I think that --

21         THE COURT:  Who does this deter?

22         MS. FISHER:  It deters both future offenders and it

23 deters the defendant from --

24         THE COURT:  Well, how do future offenders know it?  Do

25 you think anybody knows about this case?  Have you ever seen one

1  in the newspaper?

2          MS. FISHER:  Yes, Your Honor, I have seen articles in

3  the newspaper about cases like this.

4          THE COURT:  I've never seen a single case of

5  receipt -- not pedophile cases -- but I've never seen a single

6  case of receipt ever hit the newspaper.  Maybe you can refer me

7  to one, Ms. Fisher.  Name.  Give me a name.

8          MS. FISHER:  I don't know if there's been an article

9  about a single count of receipt.  I know I've had a previous

10 case that involved online child pornography that the trial was

11 covered by the number.

12         THE COURT:  The problem I'm concerned about is

13 shouldn't there be some requirement by Congress to require

14 warnings to be given on the Internet to people concerning the

15 utilization of this type of material?  Wouldn't that help,

16 rather than constantly taking these people by, so to speak,

17 surprise?  I'm worried about what's happening on the Internet.

18 I'm very concerned about it.

19         And I'm very concerned about utilizing the prisons as

20 a mental institution.  Prisons aren't mental institutions.  But

21 we're turning them into that.  What Mr. Darby needs is

22 tremendous amounts of counseling.  And there's no question about

23 it.  There's lots of problems coming from childhood on.  And of

24 course I didn't see any of that in the guidelines.  I don't see

25 any of it counted at all.  Individuals aren't.  They're saying

1  we treat everybody the same.  I worry about that.  Everybody

2  isn't the same.  Each individual comes as a distinct person, and

3  now we're treating them not as distinct people, but the

4  guideline seemingly say that everybody is equal.  Everybody

5  isn't equal.  Otherwise we'd all be -- well, you could make

6  everybody equal by reducing everybody to the lowest standard,

7  because you can't make somebody without intelligence have

8  intelligence.  So if you're going to make everybody equal, we

9  reduce everybody to the lowest standard.  And that's just not

10 done.

11         I'm questioning all of this because I'm going into the

12 factors that are required by Title 18, Section 3553.

13         I think the guidelines are excellent in some cases.

14         The question of avoiding unwarranted sentencing

15 disparities.  Have you looked into that at all, Ms. Fisher?

16         MS. FISHER:  Well, Your Honor, I think abiding by the

17 guidelines helps to keep sentences appropriately similar across

18 the country.

19         THE COURT:  So the guidelines then, you don't look at

20 any of the characteristics of each defendant, you just say "This

21 is"?  It's a science, isn't it?

22         MS. FISHER:  No, Your Honor.  The guidelines are used

23 in conjunction.

24         THE COURT:  It's a science.  What do we need a judge

25 for?  We shouldn't have judges anymore.  We can just punch in

```
 1    the computer, it punches out an answer.

 2            Ms. Fisher, what I'm trying to get at is besides

 3    exactly the crime he has committed, what other factors do you

 4    feel should be considered?  He's committed the crime.  There is

 5    no question about that.  Then what other factors are there to

 6    consider?

 7            MS. FISHER:  Your Honor, all of the factors under

 8    3553(a) can be considered by Your Honor in conjunction with the

 9    guidelines.  And as I stated, the guidelines are simply a good

10    place to start, and there is a range given by the guidelines

11    that Your Honor can look at.  And all --

12            THE COURT:  I've got to stick within the guidelines?

13            MS. FISHER:  No, Your Honor.  They are advisory.

14            THE COURT:  Do you think they're mandatory?  Do you,

15    Ms. Fisher?

16            MS. FISHER:  They are advisory.  We are just

17    requesting a sentence within the guideline.

18            THE COURT:  Ms. Fisher, I've argued too much with you.

19    I'm not criticizing you in any way.  I'm trying to get to you,

20    to tell you what some of the important factors are in sentencing

21    and why one can't just go by the guidelines, and why they're

22    purely advisory.

23            The addition -- you know, you begin to wonder how the

24    crime could have been committed without adding the necessary

25    additional points that keep coming in in these guidelines.  The
```

1  question really is what is a sentence sufficient but no greater

2  than necessary in this case, and that's what really is the

3  important factor.

4          In any event, I thank you, Ms. Fisher.  I am in no way

5  trying to criticize you.  In any way.  I'm just trying to

6  educate you in the factors that have to be considered other than

7  the commission of the offense itself.

8          There's no question that the viewing of this type of

9  pornography causes people to produce it.  The fact is that,

10  again, I feel that we're inadequately dealing with the problem

11  when we should require the internets themselves to provide

12  something.  It's interesting, because you couldn't print it in a

13  newspaper, but you can put it on the Internet.  The newspaper

14  people would be punished if they allowed it to be printed.  The

15  Internet people are not.  The question then becomes how has it

16  come about?  It's because there's no education as to the

17  deterrents that are involved in it.  Maybe it's just me.

18  Certainly it's difficult to get to it, and you've got to be very

19  proficient in the utilization of the Internet to get to it.  But

20  you can.  But now since we all now know that the greatest income

21  on the Internet is from pornography, just a question of where is

22  Sodom and Gomorrah.  Are we living in it?  Isn't it odd?  I

23  shouldn't wax on.

24          Thank you, Ms. Fisher.

25          MS. FISHER:  Thank you, Your Honor.

```
 1              THE COURT:  Let me hear from Mr. Cejas.

 2              All right, Mr. Cejas.  There's no question that Mr.

 3   Darby needs counseling.

 4              MR. CEJAS:  Yes, sir.

 5              THE COURT:  Severe counseling.

 6              MR. CEJAS:  Yes, sir, Your Honor.  And I think all our

 7   position is is that the 60-month sentence in this case is

 8   sufficient, but not greater than necessary.  He's charged with

 9   receipt, he pled to receipt, that's what was offered to him, and

10   he accepted that, and pled guilty.  He's never denied his

11   involvement.  When he first met with the authorities he was open

12   and honest, gave a full confession.  He was open and honest

13   throughout the process.

14              I think when the Court looks at -- Your Honor's

15   already discussed his history and characteristics, so I won't go

16   in any great detail there other than to note that he comes from

17   a solid family.  He still has his family's support.  His mother

18   and father could not be here today, they live quite a distance,

19   in Tennessee.  His father recently had some medical issues which

20   made it further more difficult for them to travel.  But in any

21   event, they fully support their son.  They're not happy -- and

22   they have expressed that to him -- with what's occurred, but

23   they fully support him, and that's where he would be going when

24   he is ultimately released.  I think when the Court looks at --

25              THE COURT:  Isn't any question, Mr. Cejas, that he has
```

```
 1   some problems.
 2               MR. CEJAS:  Yes, sir.
 3               THE COURT:  And there's no question about that.  The
 4   individual did well in college.  He attended for five
 5   consecutive years.
 6               MR. CEJAS:  Yes, sir.
 7               THE COURT:  But he left without completing anything
 8   nor in finding any major.  It indicates that something's
 9   missing.
10               MR. CEJAS:  Well, I think that that started to rear
11   its head, Your Honor, I think some of the things that he went
12   through in grade school, middle school, I think, for lack of a
13   better word, maybe they planted the seeds of severe depression
14   and some of the issues that later surfaced while he was in the
15   Navy which led to the attempted suicide, the suicidal ideations,
16   hospitalizations, all before he was ever charged with these
17   things.  I'm sure in looking back in his life, I'm sure that he
18   would have chosen something other than the nuclear program,
19   because that program in and of itself is extremely difficult,
20   it's an extremely rigorous program.
21               THE COURT:  What's so odd is we're beginning to get
22   people in that program who end up with the problems of
23   pornography.  I'm wondering what is the connection.
24               MR. CEJAS:  I have no idea.
25               THE COURT:  I'm sure he ins as aware of it as I am,
```

1  but...

2            MR. CEJAS:  Yes, sir.

3            But lastly, Your Honor, I think one of the things to

4  look at, which I've listed in our position paper, is the need to

5  avoid unwarranted sentencing disparity.  In all of those cases

6  that I cited, they're very similar to Mr. Darby.  He's a young

7  man, zero criminal history points, solid family, no history of

8  abusing children whatsoever, solid work history, although he did

9  have the issues with depression and hospitalization, I believe

10 that 60 months under these circumstances is sufficient.  The

11 difference between those individuals is that they pled to

12 possession.  I think you can make an argument that anyone who

13 possessed it, received it, because you have to receive it,

14 obviously, before you possess it.  So I think 60 months in this

15 case is sufficient.  That would give him the time -- I think

16 that would meet --

17           THE COURT:  Well, now the authorities send these

18 individuals to a particular institution where he can receive the

19 counseling.  That's absolutely essential.

20           MR. CEJAS:  Yes, sir.  We are asking --

21           THE COURT:  And I'm well aware of that, Mr. Cejas.

22 I'm well aware of it.  I'm very concerned about where we're

23 going, and I understand the problems.  And it's true that the

24 pornography cases have now come in to a question of what in

25 Title 18 Section 3553 is called the disparity of sentences.

1   There has to be disparity in some sentences.  A sentence of one

2   person to one day in jail might be a disaster for the

3   individual.

4           MR. CEJAS:  Yes, sir.

5           THE COURT:  Whereas somebody else may laugh at it.

6   You know?  Just laugh.

7           MR. CEJAS:  That's true, Judge.

8           THE COURT:  As you increase this constantly, you

9   change the participation of the individual.  And what we're

10  doing with the guidelines, they have -- unfortunately they're

11  not a science.

12          MR. CEJAS:  No, sir.

13          THE COURT:  Somehow or another, people have figured

14  out that this is some sort of science.  So I'm not sure

15  sentencing will ever be a science.  There are people constantly

16  adjusting it.  You know, I laughed, I said the Tax Code used to

17  be complex, you know?  Now they're trying to make the sentencing

18  guidelines as complex as the Tax Code.

19          MR. CEJAS:  Yes, sir.

20          THE COURT:  You go back and forth.  It shows that

21  bureaucracy is never satisfied.

22          MR. CEJAS:  I agree, Judge.

23          THE COURT:  Under any circumstances, you'll never

24  certify that this is final.  Nothing is ever final in

25  bureaucracy.  Constant improvements.  They have been improving

1   the Federal Rules ever since I've been here.  In fact, the

2   reason for the improvement, Mr. Cejas, is interesting.  They

3   were improving the Federal Rules so that justice could be

4   speedier.  I remember we used to try cases, from filing to

5   trial, in five months.  They adopted the Rules to make them

6   faster.  And so we could try a case in seven months.  And then

7   they adopted some more changes to make them even faster, and

8   then we got to nine months.  And they adopted some more rules

9   and they will make them even faster, we'll get to 11 months.  I

10  liked it when the Rules were one page.

11          You know, it makes everybody the same.  Just remember,

12  when we make everyone the same, we reduce everyone to the lowest

13  standard, not the highest standard.

14          MR. CEJAS:  Yes, sir.

15          Your Honor, lastly what we would ask is that the Court

16  recommend that he be confined as close to Tennessee.  There are

17  programs --

18          THE COURT:  I'm going to recommend that he be confined

19  to an institution where he can receive the counseling that I

20  think is necessary.

21          MR. CEJAS:  I understand that, Your Honor.  I would

22  say that Butner --

23          THE COURT:  And I'm not going to worry about whether

24  it's close to Tennessee or close to Virginia or close to

25  anything.  I'm going to worry about him getting appropriate

1   counseling, because I'm convinced that this young man needs

2   counseling.

3           MR. CEJAS:  I understand that, Your Honor.  I guess

4   the only, I would just say that Butner has all of the programs

5   that he could benefit from, and that's closer.  There's also

6   Devens, as the Court is aware.  It's a little further.  But we

7   just --

8           THE COURT:  Appreciate that, Mr. Cejas.  I'm not going

9   to try to tie --

10          MR. CEJAS:  I understand Your Honor.

11          THE COURT:  -- the hands of the prison authorities in

12  this case.  You know, the Bureau of Prisons has a tough row to

13  hoe.  And I just don't want him in a normal institution, because

14  it's obvious to me, at least, and to most other people who have

15  studied it over a period of time, prisons are generally run by

16  the prisoners, not by the warden, and the wardens do the

17  administration.  The society is controlled by the prisoners.

18  It's a bad feature, but it happens.

19          Anyhow, we'll see where we go.

20          MR. CEJAS:  Yes, sir.

21          THE COURT:  All right.  Mr. Darby, if you would come

22  forward?

23          Mr. Darby, as I've told you, you have a right to make

24  a sworn or an unsworn statement before sentence is imposed.

25          THE DEFENDANT:  Yes, Your Honor.  All I want to say is

1  I just apologize for the mistakes I've made and any of the pain

2  that I've caused.  That's all.

3         THE COURT:  I've gone over the advisory sentencing

4  guidelines.  There's no question Ms. Fisher is quite correct in

5  that the guideline range in this case is 97 to 121 months.

6         I've also looked at the questions that are raised by

7  Title 18, Section 3553.  And one of the major portions there,

8  the question of why the guidelines were adopted.  I like to

9  think back at that time and prior to that time.  When they were

10  adopted, they called it the Comprehensive Crime Control Act of

11  1984, but it really didn't come into effect until 1986, in

12  reality, when one could get Strom Thurmond and Bobby Kennedy to

13  agree on anything, and this is what they agreed on.  You realize

14  that we got both ends of the spectrum agreeing on a particular

15  bill.  And somehow or another, it's taken on the view that it's

16  scientific.  Well, it isn't scientific.  We've got to consider

17  the characteristics of each defendant.  Considering that, and

18  considering the necessity for uniformity of sentencing, and

19  taking into consideration all of the factors that are set forth

20  in Title 18 Section 3553, I've come to a conclusion a little

21  different than that of the guidelines.

22         Pursuant to the Sentencing Reform Act of 1984, it is

23  the judgment of the Court that the defendant, Gerald Andrew

24  Darby, is hereby committed to the custody of the United States

25  Bureau of Prisons to be imprisoned for a term of 60 months.

1        The defendant is remanded to the custody of the United

2  States Marshal.

3        Upon release from imprisonment, the defendant shall be

4  placed on supervised release for a term of 15 years.

5        Within 72 hours of release from the custody of the

6  Bureau of Prisons, the defendant shall report in person to the

7  probation office in the district to which the defendant is

8  released.

9        The defendant shall refrain from any unlawful use of a

10  controlled substance, and submit to one drug test within 15 of

11  release on supervised release and at least two periodic drug

12  tests thereafter, as may be directed by the probation officer.

13        While on supervision, the defendant shall not commit

14  another federal, state or local crime, shall not unlawfully

15  possess a controlled substance, and shall not possess a firearm

16  or a destructive device.

17        The defendant shall comply with the standard

18  conditions that have been adopted by this court for probation

19  and supervised release, but also comply with the following

20  additional conditions:

21        If the defendant tests positive for illicit substances

22  or alcohol during his period of supervised release, he shall

23  participate in a program approved by the United States Probation

24  Office for substance abuse, which program may include

25  residential treatment and testing to determine whether the

1  defendant has reverted to the use of drugs or alcohol, with

2  partial costs to be paid by the defendant, all as may be

3  directed by the probation officer.

4        The defendant will abstain from alcohol during his

5  period of supervised release unless he has pre-approval

6  therefrom the probation officer.

7        The defendant shall waive all rights of

8  confidentiality regarding substance abuse treatment or any

9  psychological treatment in order to allow the release of

10  information to the United States Probation Office and to the

11  Bureau of Prisons, and authorize communication between the

12  probation officer the Bureau of Prisons and any treatment

13  provider.

14        The defendant shall, while incarcerated, it's

15  recommended that he participate in a program to include

16  psychosexual evaluation and sex offender treatment while

17  incarcerated.

18        While on supervised release, the defendant shall

19  participate in a program approved by the United States Probation

20  Office for mental health treatment, to include psychosexual

21  evaluation and sex offender treatment.  The costs of these

22  programs are to be paid partially by the defendant as may be

23  directed by the probation officer.

24        The defendant shall waive all rights of

25  confidentiality regarding sex offender mental health treatment

23

1  to allow the release of information to the United States

2  Probation Office and the Bureau of Prisons and authorize

3  communication between the probation officer and the Bureau of

4  Prisons and any treatment provider.

5         The defendant shall submit to polygraph testing as

6  directed by the United States Probation Officer as part of the

7  defendant's sex offender therapeutic program.  The costs of the

8  testing to be paid partially by the defendant, all as directed

9  by the probation officer.

10         The defendant shall submit to penile plethysmograph

11  testing or Able assessment for sexual interest as directed by

12  the United States probation officer as part of his sex offender

13  therapeutic treatment.  The costs of the testing are to be paid

14  partially by the defendant as may be directed by the probation

15  officer.

16         The defendant shall not utilize any sex-related adult

17  telephone services, websites or electronic bulletin boards.  The

18  defendant shall submit any records requested by the probation

19  officer to verify compliance with this condition, including but

20  not limited to credit card bills, telephone bills, cable and

21  satellite television bills, or any type of bill that may be

22  provided by the provider of such information.

23         The defendant shall not have any access to or possess

24  any pornographic material or pictures displaying nudity or any

25  magazines using juvenile models or pictures of juveniles.  The

24

1   defendant shall have no contact with minors unless supervised by

2   a competent, informed adult, approved in advance by the

3   probation officer.

4          The defendant shall not engage in any employment or

5   volunteer services that allow him access to computers or minors

6   without the specific permission of the probation officer.

7          Pursuant to the Adam Walsh Child Protection and Safety

8   Act of 2006, the defendant shall register with the state sex

9   offender registration agency in any state where the defendant

10  resides, works and attends school according to federal and state

11  law, as may be directed by the probation officer.

12         Pursuant to that the Adam Walsh Child Protection and

13  Safety Act of 2006, the defendant shall submit to a search of

14  his person, property, house, residence, vehicle, papers,

15  computer, and any electronic communications or data storage

16  devices or media and effects at any time by any law enforcement

17  or probation officer with reasonable suspicion concerning

18  unlawful conduct or a violation of a condition of supervision

19  upon prior notification to and approval by the Court, or with a

20  warrant.

21         The defendant shall not possess or use a computer to

22  access any online computer services at any location, including

23  employment, without the prior approval of the probation officer.

24  This includes any Internet service providers, bulletin board

25  systems or any other public or private computer network.

```
1              The Court has considered the defendant's net worth and

2    zero liquid assets, his lifestyle and financial needs as

3    reflected in the presentence report, his earning potential, and

4    the lack of dependents relying on his support.  The Court finds

5    the defendant is not capable of paying a fine, but must pay a

6    special assessment in the amount of $100.

7              No restitution.  No fine.

8              The special assessment shall be due in full

9    immediately.  Any balance remaining unpaid on the special

10   assessment at the inception of supervision shall be paid by the

11   defendant upon supervision, period.

12             The defendant shall notify the United States Attorney

13   for this district within 30 days of any change of name,

14   residence or mailing address until the special assessment

15   imposed by this judgment is fully paid.

16             Anything further need be done in this matter, Mr.

17   Cejas?

18             MR. CEJAS:  No sir, Your Honor.

19             THE COURT:  Anything else, Ms. Fisher?

20             MS. FISHER:  Yes, Your Honor.  At this point the

21   government moves to dismiss the remaining counts of the

22   indictment.

23             THE COURT:  The remaining counts of the indictment to

24   which the defendant has not pled guilty are hereby dismissed.

25             MS. FISHER:  And Your Honor, also, there is a
```

1  forfeiture order that was re-signed today.  It was signed

2  originally at the change of plea, but it was not filed.  It's

3  been signed today, and I believe given to the Court.

4            THE COURT:  Anything else?

5            MR. CEJAS:  No, sir.

6            THE COURT:  Anything else, Ms. Fisher?

7            MS. FISHER:  No, Your Honor.

8            THE COURT:  Thank you.

9            (Whereupon, proceedings concluded at 10:50 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1                          *CERTIFICATION*

2

3          *I certify that the foregoing is a true, complete and*

4     *correct transcript of the proceedings held in the above-entitled*

5     *matter.*

6

7                    _____

8                     Paul L. McManus, RMR, FCRR

9                          _____

10                              Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25